IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MANUEL DAVID PEREZ-GUTIERREZ, *Appellant.*

No. 1 CA-CR 22-0268
FILED 5-9-2023

Appeal from the Superior Court in Maricopa County
No. CR2020-135003-001
The Honorable Geoffrey H. Fish, Judge

**REMANDED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Ashley Torkelson Levine
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Aaron J. Moskowitz
*Counsel for Appellant*

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Michael J. Brown joined. Judge Michael S. Catlett filed a dissenting opinion.

**M c M U R D I E**, Judge:

¶1        Manuel David Perez-Gutierrez appeals from the superior court's sentencing order imposing consecutive sentences for multiple counts of sexual conduct with a minor. Applying A.R.S. § 13-711(A), we remand for the court to explain why it exercised its discretion to impose consecutive sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In 2022, a jury found Perez-Gutierrez guilty of two counts of sexual conduct with a minor under 15, class 2 felonies and dangerous crimes against children, and six counts of sexual conduct with a minor under 18, class 6 felonies. The convictions stem from Perez-Gutierrez's near-daily sexual abuse of his wife's younger half-sister. The abuse occurred when the victim was between 10 and 17, beginning in 2013.

¶3        Before the sentencing, the adult probation department submitted a presentence report recommending consecutive sentences. The report also contained the State's recommendation for consecutive sentences and a statement by the victim's half-sister requesting "the maximum time possible."

¶4        At the sentencing hearing, the superior court acknowledged that it reviewed the presentence report's "recommendation for prison on all counts consecutive, the victim['s] sister's statement that was submitted to the pre-sentence report, the State's written recommendation, the defendant's criminal history which is nonexistent prior to these offenses . . . as well as all the information heard during the trial held in this matter." The court allowed the parties to provide additional recommendations, with Perez-Gutierrez pleading for leniency.

¶5        After finding probation was inappropriate for any of the convictions, the superior court found "the presumptive sentence to be appropriate." The court imposed consecutive, presumptive sentences

totaling 46 years' imprisonment without further explanation. Perez-Gutierrez did not object to the sentences imposed or request more explanation. He timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A)(4).

## DISCUSSION

**¶6**        Perez-Gutierrez argues the superior court erred by failing to explain why it imposed consecutive sentences as required by A.R.S. § 13-711(A). We review an unobjected-to sentencing order for fundamental error, *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018), and questions involving the interpretation and application of a sentencing statute *de novo*, *State v. Lambright*, 243 Ariz. 244, 249, ¶ 9 (App. 2017). When a statute's text is unambiguous, we apply its plain meaning. *State v. Burbey*, 243 Ariz. 145, 147, ¶ 7 (2017).

**¶7**        The parties agree that the current version of A.R.S. § 13-711(A), amended in 2019, applies to Perez-Gutierrez's sentences, which resulted from offenses committed before and after that amendment. *See* 2019 Ariz. Sess. Laws, ch. 179, § 1. We concur. "New rules of procedure are often applied to actions already pending," and such application is not "retroactive" simply because it relates to antecedent facts. *See State Comp. Fund of Ariz. v. Fink*, 224 Ariz. 611, 613, ¶ 9 (App. 2010); *see also State ex rel. Montgomery v. Harris ex rel. County of Maricopa*, 232 Ariz. 34, 35, ¶ 5 (App. 2013) (The law applies if it is "procedural in nature, rather than substantive."); *In re Shane B.*, 198 Ariz. 85, 88, ¶ 9 (2000) (defining substantive criminal laws).

**¶8**        The current version of A.R.S. § 13-711(A) provides:

> If multiple sentences of imprisonment are imposed on a person at the same time, the sentences imposed by the court may run consecutively or concurrently, as determined by the court. *The court shall state on the record the reason for its determination*.

(Emphasis added.) In *State v. Anzivino*, 148 Ariz. 593, 597–98 (App. 1985), we considered a previous version of A.R.S. § 13-711(A) that contained analogous language. Then numbered A.R.S. § 13-708, the statute read:

> If multiple sentences of imprisonment are imposed on a person at the same time . . . the sentence or sentences imposed by the court shall run concurrently unless the court expressly

> directs otherwise, *in which case the court shall set forth on the record the reason for its sentence*.

*See* 1978 Ariz. Sess. Laws, ch. 201, §§ 104, 108 (emphasis added). As here, the superior court in *Anzivino* "did not state grounds for imposing consecutive sentences, as [it] was required to do by A.R.S. § 13-708." 148 Ariz. at 597. We held that "the procedure for imposing consecutive sentences as dictated by A.R.S. § 13-708 is mandatory." We noted that the caselaw applying A.R.S. § 13-708 had held that the "trial court must comply with the statute." *Id.* at 598 (quoting *State v. Collins*, 133 Ariz. 20, 24 (App. 1982)).

**¶9**       In *Anzivino*, we recognized the "strong policy reasons" for requiring the superior court to issue findings before imposing consecutive sentences, concluding that "[i]t is, and will remain, our practice to remand cases for resentencing whenever we discover a violation of A.R.S. § 13-708. To do less would render the statute a dead letter." *Anzivino*, 148 Ariz. at 598. As a result, we remanded the case to the superior court to make the required findings under the statute. *Id.*

**¶10**       When considering other sentencing statutes, we have acknowledged "the steady stream of persons who are sentenced to prison on a daily basis" and that "the requirement that reasons for a sentence be articulated helps ensure that the process does not become purely mechanical." *State v. Holstun*, 139 Ariz. 196, 197 (App. 1983) (remanding for resentencing when the superior court failed to issue findings as required by A.R.S. § 13-702); *see also State v. Harrison*, 195 Ariz. 1, 3–5, ¶¶ 6–17 (1999) (same).

**¶11**       Moreover, our practice of remanding for findings follows other areas of the law where statutory obligations to make express findings or conclusions are imposed on the superior courts. *See, e.g.*, *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 297, ¶ 20 (App. 2020) (remanding for further findings because "the juvenile court's minute entry said nothing more than that the allegations in the dependency petition were true by a preponderance of the evidence"); *cf. Miller v. Bd. of Supervisors of Pinal County*, 175 Ariz. 296, 300 (1993) (An appellate court reviewing the sufficiency of findings under Arizona Rule of Civil Procedure 52 will "ordinarily remand for further findings" though it was not "in a position to do so" in that case.).

**¶12**       Here, the State contends that the superior court provided a sufficient basis for its determination under A.R.S. § 13-711(A) by avowing

that it reviewed sentencing recommendations, a victim impact statement, and trial testimony. The State argues that the evidence at trial and the "full context" of the sentencing hearing support consecutive sentences.

¶13 To be sure, this court does not require a specific litany; substantial compliance in this context is sufficient. *See Harrison*, 195 Ariz. at 4, ¶ 12 (addressing findings for the imposition of aggravating and mitigating factors). For example, the superior court might substantially comply with A.R.S. § 13-711(A)'s provisions by stating that it considered the sentencing recommendations, finds the reasoning appropriately supports them, and will follow them. Alternatively, the superior court might reveal that it thinks the crimes are distinct enough that consecutive sentences are warranted. But as the supreme court explained in *Harrison*, "at a minimum [substantial compliance] means articulating at sentencing the factors the judge considered . . . *and explaining how these factors led to the sentence[] imposed.*" *Harrison*, 195 Ariz. at 4, ¶ 12. (Emphasis added.)

¶14 Here, the superior court's avowal that it had considered the sentencing recommendations, victim impact statement, and trial evidence is one-half of the "minimum" requirement for substantial compliance with A.R.S. § 13-711(A). That the court reviewed those information sources is important but inadequate without more. Because the court's "sentencing role should *never* be purely ministerial," the sentencing transcript or order "must disclose articulated reasons" for the court's determination to comply with A.R.S. § 13-711(A). *See Holstun*, 139 Ariz. at 197–99 (emphasis in original).

¶15 We agree with the State that on review, we may look beyond the sentencing transcript to assess compliance with A.R.S. § 13-711(A) when the superior court communicates that it relied on a particular document or record evidence. That said, we will not search beyond the sentencing transcript or written order without an indication of the court's reliance on such evidence. To do so would require us to ignore the statute's plain language and engage in guesswork. Moreover, nothing in A.R.S. § 13-711(A) suggests that its requirements are "satisfied simply because an appellate court is able to infer what the judge might have thought." *See Harrison*, 195 Ariz. at 4, ¶ 11. Although we may typically infer that the superior court has made the determinations necessary to sustain its judgment if the record supports them, this principle does not apply if the court completely failed in its obligation to make statutory determinations. *Francine C.*, 249 Ariz. at 297, ¶ 19.

¶16 Finally, we reject the State's claim that Perez-Gutierrez failed to establish fundamental error requiring remand. As we stated in *Anzivino*, the superior court's "failure to state grounds for imposing consecutive sentences does not fit neatly into [the] definition of fundamental error." 148 Ariz. at 598. This is true because the statutory requirement can neither be inferred from a court's order nor waived by a party. If the court "failed to fulfill [its] statutory duty, we cannot, as a practical matter, review [its] decision on appeal." *Aguirre v. Indus. Comm'n of Ariz.*, 247 Ariz. 75, 78, ¶ 15 (2019). A party cannot waive an obligation of the superior court that our legislature "imposed . . . for the primary purpose of aiding an appellate review." *Francine C.*, 249 Ariz. at 296, 298, ¶¶ 16, 25 ("A party litigating a matter involving mandatory findings does not have to ask before the judgment to require that the court make findings."). We, therefore, decline to apply waiver principles to the statutory requirement of A.R.S. § 13-711(A). The matter is remanded for the court to satisfy its statutory duty under A.R.S. § 13-711(A) for sentences it had the discretion to impose consecutively or concurrently.

### Caselaw Does Not Support the Dissent's Critique, Nor Does It Persuade Us to Depart from *Anzivino*.

¶17 We briefly address the concerns raised by our dissenting colleague. We note that the sentencing statute has been rewritten since *Anzivino*. But we have no reason to believe—nor is there an argument before us—that the change in the statute should result in any substantive change in what the law directs that superior courts "shall" do when imposing sentences. *Anzivino* remains good law. Still, the Dissent identifies that we need not follow *Anzivino*. Dissent, ¶ 31. The Dissent characterizes our remand practice as adherence to mere "technical error" and asserts we should abandon *Anzivino* and apply fundamental error review.

¶18 Indeed, we need not follow precedent if it is "clearly erroneous." *See White v. Bateman*, 89 Ariz. 110, 113 (1961). But it is not merely this court's precedent we would need to ignore. We would first need to disregard the explicit requirement of the statute: "The court shall state on the record the reason for its determination." A.R.S. § 13-711(A). Deference to precedent aside, we cannot defy the legislature's directives by characterizing them as a mere technicality.

¶19 Moreover, the Arizona Supreme Court has clarified that we must comply with statutes requiring specific determinations. For example, in *Matter of Appeal in Pima County Juvenile Action No. S-933*, 135 Ariz. 278 (1982), our supreme court resolved a split between divisions on whether

A.R.S. § 8-538(A) imposed a findings requirement before a juvenile order may be considered final. 135 Ariz. 278, 280–81. The court ruled that "remanding the case to juvenile court for compliance with the statute" was the correct practice because "the requirements of A.R.S. § 8-538(A) must be complied with." *Id.* Similar reasoning applied in *Anzivino*. And it applies in this case. Indeed, the "practice" from *Anzivino* that the Dissent today disparages has its roots in precedent we may *not* freely abandon.

¶20        Of course, we agree with the Dissent that the statute does not impose a "findings requirement" as it does not require the superior court to state that "this court finds" before giving its reason. *See* Dissent, ¶ 49. But the Dissent draws a distinction without a difference. There is no magic in the term "find" or "finding." While some statutes direct the superior court to make "findings," *e.g.*, A.R.S. §§ 8-844(C)(1)(a), 25-403(B), 41-1063, there are others that require that the superior court weigh certain factors or make considerations, *e.g.*, A.R.S. § 25-408(I)(1)–(8). Yet even when the statutes do not impose a formal "findings requirement," we have remanded cases to the superior court to provide reasons when the court has failed to do so. *See, e.g.*, *Owen v. Blackhawk*, 206 Ariz. 418, 420–21, ¶¶ 8–9 (App. 2003) (Although the action was brought under the child relocation statute, A.R.S. § 25-408, which only required that the court "consider" best interest factors, this court remanded because the trial court's consideration of the factors could not be reviewed on appeal without findings.).

¶21        The abundance of cases in which this court has remanded for findings is unsurprising because the function of a determination requirement is to provide this court with a sufficient record of the superior court's reasoning such that we may make an informed review of its decision. *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012) ("[T]he primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law."). And here, A.R.S. § 13-711(A)'s directive to provide a reason for imposing consecutive or concurrent sentences serves the same function. We should thus review it like we would the requirement of a finding.

¶22        The Dissent downplays the directive of A.R.S. § 13-711(A) because the statute does not require a specific reason—or even narrow the universe of reasons—that the superior court may consider when making its sentencing decision. Dissent, ¶ 49. To be sure, we agree that the reasons provided by the superior court need not be robust. *Cf. State v. Sanchez*, 130 Ariz. 295, 301 (App. 1981) (remanding for failure to state reasons, but noting

that the superior court need only say, "Your crimes were committed against two victims," to impose consecutive sentences).

¶23        But even where the superior court wields broad discretion, its decisions may not be arbitrary, capricious, or based on inappropriate factors. *See State v. Meeker*, 143 Ariz. 256, 266 (1984). Nor can the sentencing process be "purely mechanical." *Harrison*, 195 Ariz. at 4, ¶ 10 (quoting *Holstun*, 139 Ariz. at 197). Because there are limits to the discretion granted to the superior court, it is unsurprising that the legislature requires the court to provide its reasons on the record to enable appellate review. *See Holstun*, 139 Ariz. at 197 (citing *State v. Biles*, 597 P.2d 808 (Or. 1979) (The court was "bound by the legislative mandate requiring the articulation of reasons unless it could say that the statute was absurd."). Furthermore, by providing no grounds for its sentencing decision, a superior court effectively deprives a defendant of the opportunity for meaningful appellate review. Without findings, a consecutively sentenced defendant would have no basis to challenge what is, perhaps, the most meaningful aspect of the sentence. In this respect, a court always prejudices a defendant by failing to make such findings.

¶24        Still, because we do not fully consider prejudice here, the Dissent critiques our analysis as applying a "structural error" review. Dissent, ¶ 47. We reject this characterization. Structural error occurs only "[i]n a limited number of cases" where "no criminal punishment may be regarded as fundamentally fair." *State v. Ring*, 204 Ariz. 534, 552, ¶ 45 (2003). "In such instances, we automatically reverse the guilty verdict entered." *Id.* Here, we are not "automatically revers[ing]" the superior court's sentencing decision. We are *remanding* for the superior court to make the determinations as directed by A.R.S. § 13-711(A). There is no structural error because it is possible that this criminal punishment *was* "fundamentally fair." *Ring*, 204 Ariz. at 552, ¶ 45. We simply cannot know until the superior court provides its sentencing reasons.

¶25        The Dissent also states that it would apply harmless error if the defendant objects at sentencing and fundamental error if he does not. Dissent at ¶ 29. By taking this position, the Dissent implies that defendants should interrupt the superior court's sentencing pronouncement to preserve their appeal. But we have held the exact opposite, noting that the pronouncement of a sentence is a "solemn event." *State v. Vermuele*, 226 Ariz. 399, 402, ¶ 8 (App. 2011) ("[W]e decline to impose a requirement that counsel interrupt what should be a solemn event, occurring after all the parties have had an opportunity to address the court, simply to preserve the appellate record."); *see also State v. Hancock*, 240 Ariz. 393, 400, ¶ 27

(App. 2016). While we do not deny that an objection by Perez-Gutierrez may have been the most efficient means to acquire the superior court's sentencing reasons, we will not require a defendant to object when our caselaw overtly sanctions remaining silent during sentencing.

¶26        Finally, the Dissent correctly notes that the statute, as interpreted by *Anzivino,* interacts oddly with Rule 26.13. Dissent at ¶ 37. This unusual interplay may well be a reason for our supreme court to update Rule 26.[1] But the Rule does not, and cannot, override the statutory requirement to provide reasons. Although Rule 26.13 gives a default sentencing result if the court does not articulate a decision, it does not expressly authorize the superior court to ignore the directive of A.R.S. § 13-711(A). *See State v. Hansen*, 215 Ariz. 287, 289, ¶ 7 (2007) (Rules and statutes "should be harmonized wherever possible and read in conjunction with each other.").

## CONCLUSION

¶27        We remand for the superior court to place on the record the reasons for its sentencing decisions.

**C A T L E T T,** Judge, dissenting:

¶28        I agree with much of the majority opinion. The current version of A.R.S. § 13-711(A) came into existence prior to Perez-Gutierrez's sentencing, and thus that version applies without analyzing retroactivity. *See State Comp. Fund of Ariz. v. Fink*, 224 Ariz. 611, 613 ¶ 9 (App. 2010). We can (and should) look beyond the four corners of a sentencing transcript when the superior court has expressly relied on other documents in imposing a consecutive or concurrent sentence. And the superior court failed to adequately explain why it imposed consecutive sentences, in violation of A.R.S. § 13-711(A).

¶29        I part ways with the majority opinion at the next (and final) step. The majority opinion applies an automatic remand "practice" our Court first created—and seemingly last used—in *State v. Anzivino*, 148 Ariz. 593, 597–98 (App. 1985). Instead of remanding for resentencing, we should follow the same path we do in almost all criminal cases where error occurs

---

[1]        We note that A.R.S. § 13-711 was last amended in 2019, while Rule 26.13 has not been changed since 2018.

in the superior court—apply harmless error review if a defendant objected and fundamental error review if he did not. Because Perez-Gutierrez didn't object to the superior court's failure to orally state reasons for imposing consecutive sentences or attempt to show fundamental error, I would affirm the sentences.

¶30        In *Anzivino*, this Court acknowledged that "[w]e are . . . required to review the record of criminal cases for fundamental error and reverse where such error is found to be prejudicial to the defendant." 148 Ariz. at 597. So far, so good. The Court then acknowledged that "[t]he trial court's failure to state grounds for imposing consecutive sentences does not fit neatly into this definition of fundamental error." *Id.* at 598. Also correct. Then things went awry—the Court, based on "strong policy reasons," created a "practice to remand cases for resentencing whenever we discover a violation of A.R.S. § 13-708."[2] *Id.* The Court affirmed the conviction but remanded for resentencing. *See id.*

¶31        We should steer away from *Anzivino*'s "practice" of automatic remand. Granted, precedent is important, and we should change direction only when a prior decision is "clearly erroneous." *White v. Bateman*, 89 Ariz. 110, 113 (1961); *Gamble v. United States*, 139 S. Ct. 1960, 1984 (2019) (Thomas, J., concurring) ("When faced with a demonstrably erroneous precedent, my rule is simple: We should not follow it."). But as a judicial creation, the "practice" is highly susceptible to reconsideration, and there is plenty reason to do so. *See State v. Hickman*, 205 Ariz. 192, 201 ¶ 38 (2003) ("When a court proposes to abandon precedent in a case involving court-created rules, the burden of proof is lowest[.]").

¶32        The portion of *Anzivino* creating the "practice" was gratuitous. The defendant had not complained about the superior court's failure to state reasons for consecutive sentences. *See Anzivino*, 148 Ariz. at 597. The State, instead, raised the issue in its answering brief, leading the Court to thank the assigned assistant attorney general for "candidly calling our attention to this matter." *See id.* at 597–98. The Court admitted that normally, "because appellant did not raise the issue in the opening brief, nor file[] a reply brief once the state suggested the existence of the issue, we would hold that appellant has waived the issue," yet then created the "practice." *See id.* at 597.

¶33        The *Anzivino* Court's reasoning spans four sentences, one of which announces the "practice." The other three each give a reason for the

---

[2] A.R.S. § 13-708 is a predecessor to A.R.S. § 13-711.

"practice," but none withstand scrutiny. The first sentence explains that the "procedure for imposing consecutive sentences" is mandatory. *Id.* at 598. True enough. But the Bill of Rights and the Fourteenth Amendment are mandatory, and yet violations of those provisions, and any number of mandatory statutory obligations and court rules, are subject to fundamental error review. *See, e.g.*, *State v. Henderson*, 210 Ariz. 561, 568 ¶ 22 (2005) (holding that a violation of a defendant's Sixth Amendment right to trial by jury during sentencing is subject to fundamental error review); *State v. Morales*, 215 Ariz. 59, 61 ¶ 10 (2007) (reviewing a failure to conduct a Rule 17.6 colloquy for fundamental error).

¶34 The second sentence posits that the same "strong policy reasons" for requiring trial courts to articulate reasons for an aggravated sentence apply to imposing consecutive sentences. *Anzivino*, 148 Ariz. at 598. It's far from clear, however, that strong policy reasons support exempting aggravated sentences from harmless/fundamental error review. *See State v. Harrison*, 195 Ariz. 1, 5–6 ¶¶ 18–21 (1999) (McGregor, J., dissenting); *Jones v. Mississippi*, 141 S. Ct. 1307, 1321 (2021) ("But many States traditionally have not legally required (and some States still do not legally require) on-the-record explanations by the sentencer."). Regardless, those same policy reasons do not support exempting § 13-711(A)'s reason requirement from fundamental error review.

¶35 There are myriad reasons why a sentencing judge might impose an aggravated or mitigated sentence. Thus, "the judge's articulation of factors will enable an appellate court to determine whether the trial judge has correctly considered the specific aggravating or mitigating circumstances." *Harrison*, 195 Ariz. at 4 ¶ 11. Similarly, "[t]he victim, the defendant, and the public have the right to know why a particular sentence was imposed and that it was not arbitrary." *Id.*

¶36 Imposing concurrent or consecutive sentences is different—the choice between consecutive or concurrent sentences is binary. And in many cases, the primary factor driving that choice is whether the defendant is being punished for one act or multiple. If for one act, concurrent sentences for multiple crimes are legally required. *See* A.R.S. § 13-116 ("An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."). If for multiple acts, consecutive sentences for multiple crimes are permitted. *Anzivino* does not suggest that a superior court cannot simply say that consecutive sentences are appropriate because the defendant was convicted of multiple crimes for multiple acts. But such

a short statement is not at all necessary for appellate review; we can readily determine on appeal whether convictions involve one or multiple acts.

¶37 Moreover, absent statutory directives not applicable here (where, for example, consecutive sentences are required), sentencing judges have always had wide discretion to impose consecutive or concurrent sentences. *See State v. Garza*, 192 Ariz. 171, 174–75 ¶ 12 (1998) ("[W]e approve *Fillmore* and hold that § 13–708 does not create a statutory presumption designed to bind judicial discretion."). The Arizona Rules of Criminal Procedure say that if a sentencing court does not designate sentences as concurrent or consecutive, they run consecutively. *See* Ariz. R. Crim. P. 26.13. *Anzivino*, therefore, oddly reasons that appellate review *requires* an explanation, while a court rule simultaneously allows consecutive sentences through silence. It is odd to *require* remand where the superior court expressly imposes consecutive sentences with no reasoning, when a court rule imposes consecutive sentences where the superior court is completely silent. If anything, this arrangement encourages more silence, not less.

¶38 The third sentence in *Anzivino* states the Court's belief that anything other than the practice of automatic remand "would render the statute a dead letter." 148 Ariz. at 598. The same could be said about any constitutional or statutory protection subject to fundamental error review, and yet those protections remain not only alive, but quite vigorous. *See, e.g.*, *State v. Murray*, 250 Ariz. 543, 554 ¶ 40 (2021) (concluding that the prosecutor's misstatement of the reasonable-doubt standard satisfied the fundamental error standard). I doubt our superior court colleagues base their adherence to a statutory requirement on our chosen standard of review; I believe the superior courts will dutifully follow § 13-711(A)'s reason requirement even if we apply harmless/fundamental error review. *Anzivino*'s assumption otherwise is too appellate-centric.

¶39 One last word about *Anzivino*. In the nearly four decades since its issuance, not a single appellate decision, published or unpublished, has applied its automatic-remand practice—that is, until today's opinion. This dearth of reliance is hardly surprising. In *Henderson*, our Supreme Court noted that "appellate decisions" had been inconsistent regarding "the showing necessary to establish fundamental error," and explicitly disapproved of "any prior decisions" that were "inconsistent with today's holding." *Henderson*, 210 Ariz. at 568, ¶ 21. *Anzivino* is inconsistent with *Henderson*'s application of fundamental-error review to sentencing error, and thus *Anzivino* seemingly faded away. Given the complete absence of

reliance on *Anzivino*'s "practice" and its inconsistency with *Henderson*, we should not retain it, let alone revive it.

¶40        With *Anzivino* out of the way, fundamental error review should apply to any unobjected-to failure to comply with A.R.S. § 13-711(A)'s reason requirement. We should not vacate sentences for technical error—and that's what the reason requirement is in most circumstances, a technicality. Doing so is inconsistent with the Arizona Constitution and Arizona law.

¶41        Arizona's founders (correctly) thought the common law practice of reversing for technical error could undermine public trust in the legal system. Thus, the Arizona Constitution provides that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz. Const. art. VI, § 27 (formerly art. VI, § 22). As our Supreme Court explained at the time of statehood, this harmless error provision carries out the "very laudable purpose" that "[t]he policy of the law is, or ought to be, to sustain the judgment of the trial court when it can reasonably be done, and thus put an end to litigation." *See Albert Steinfeld & Co. v. Wing Wong*, 14 Ariz. 336, 342 (1912). Other constitutional provisions similarly recognize the importance of finality. The Victims' Bill of Rights, for example, guarantees a victim's right to a "prompt and final conclusion of the case after the conviction *and sentence*." Ariz. Const. art. II, § 2.1(A)(10) (emphasis added).

¶42        Arizona statutes have, since Arizona's founding, also required courts to review error for prejudice. Arizona's first statutory code provided that "[n]o . . . information is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant upon its merits." Ariz. Rev. Stat. Penal Code § 944 (1913). This statutory harmless error requirement has survived with only minor alteration—an error in a proceeding does not invalidate the proceeding "unless it actually has prejudiced, or tended to prejudice, the defendant in respect to a substantial right." A.R.S. § 13-3987. We should apply the text of the Constitution and the statute as written and commonly understood, rather than writing in exceptions more than a century later based on what we think are "strong policy reasons." *See Matthews v. Indus. Comm'n of Ariz.*, __ Ariz. __, 520 P.3d 168, 174 ¶ 29 (2022).

¶43        Admittedly, our Supreme Court has not applied harmless error review in all circumstances (although it has in most). Instead, the Court has explained that the applicability of harmless error review depends

on "two distinct, though related" questions. *Hickman*, 205 Ariz. at 199 ¶ 30. First, will the error "likely affect the reliability of the truth-finding process?" *Id.* Second, "is the truth finding impact of the error incapable of rational assessment?" *Id.* If the answer to either of those questions is no, then harmless/fundamental error review applies.

¶44         Here, the answer to the first question is no, and thus the answer to the second is irrelevant. The reasons why the superior court imposes a consecutive or concurrent sentence have no effect on the reliability of the truth-finding process. By the time that sentencing decision is made, the jury has discharged its duty (or a plea has been accepted). In fact, by that time, much of the sentencing process is also complete: interested parties have submitted pre-sentence reports, sentencing memoranda, and victim statements, and the superior court has selected the number of years to be served for each count. With no effect on the truth-finding process, "it is irrelevant whether the impact of the error is incapable of rational assessment." *Id.* (cleaned up).

¶45         It's not as if fundamental error review rarely applies in the sentencing context. To the contrary, "Arizona appellate courts have consistently reviewed legal sentencing errors for fundamental error even when there has not been an objection below." *State v. Smith*, 219 Ariz. 132, 136 ¶ 20 (2008). In *Henderson*, for example, the Court held that a sentencing court's violation of a defendant's right to trial by jury is subject to fundamental error review. *See* 210 Ariz. at 568 ¶ 22. In *Morales*, the sentencing court's failure to provide a plea-type colloquy when the defendant stipulated to a prior conviction, resulting in an enhanced sentence, garnered fundamental error review. 215 Ariz. at 61 ¶ 10. And in *State v. Joyner*, we applied fundamental error review to the sentencing court's failure to impose statutorily mandated probation. 215 Ariz. 134, 137 ¶ 5 (App. 2007). These are just three of many examples.

¶46         "If important constitutional errors are subject to harmless error review, then, logically," it should apply here too. *Hickman*, 205 Ariz. at 199 ¶ 29. In just the last two years, our Supreme Court has consistently applied fundamental error review in situations, unlike here, where the truth-finding process is potentially at risk. *See, e.g.*, *State v. Fierro*, 254 Ariz. 35, __ ¶ 20 (2022) (reviewing a claim that the trial judge issued an incorrect jury instruction for fundamental error); *State v. Allen*, 253 Ariz. 306, __ ¶ 13 (2022) (reviewing a claim that the trial judge erroneously admitted witness testimony for fundamental error); *State v. Robinson*, 253 Ariz. 121, __ ¶ 64 (2022) (reviewing a claim of prosecutorial error for fundamental error); *State v. Thompson*, 252 Ariz. 279, 293 ¶ 46 (2022) (reviewing a claim of a violation

of the Sixth Amendment right to an impartial jury for fundamental error); *Murray*, 250 Ariz. at 547–48 ¶ 11 (reviewing a prosecutor's misstatement of the reasonable-doubt standard for fundamental error). If fundamental error applies in each of those situations, it should apply here as well.

**¶47** The majority opinion instead elevates a failure to explain the reasons for imposing a consecutive or concurrent sentence to structural error, requiring automatic vacatur and remand. Ordinarily, "structural errors deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence and no criminal punishment may be regarded as fundamentally fair." *State v. Ring*, 204 Ariz. 534, 552 ¶ 45 (2003) (cleaned up) (quoting *Neder v. Unites States*, 527 U.S. 1, 8-9 (1999)). There are "relatively few instances in which we should regard error as structural." *Id.* at 552 ¶ 46. Before today, in every instance where error has been deemed structural, "the error infected 'the entire trial process' from beginning to end." *Id.* Failure to comply with A.R.S. § 13-711(A) does not deprive a defendant of basic protections ensuring fundamental fairness or infect the entire trial process.

**¶48** The majority opinion also relies on *State v. Vermeule*, wherein we held that defendants should not have to interrupt the superior court's sentencing pronouncement to preserve the appellate record. 226 Ariz. 399, 401 ¶ 6 (App. 2011). *Vermeule* involved an argument that the superior court failed to give adequate weight during sentencing to mitigation evidence. *See id.* at 401 ¶ 5. *Vermeule* applied harmless error review because there had been no "procedural opportunity" for the defendant to object during sentencing. *See id.* at 402 ¶ 9. *Vermuele*, however, is inconsistent with *State v. Allen*, decided just three years ago, wherein our Supreme Court applied fundamental error review to an argument that a superior court erroneously applied unsupported aggravating factors during sentencing. 248 Ariz. 352, 367 ¶58 (2020). There is no indication in *Allen* that the defendant had a "procedural opportunity" to raise the argument at sentencing, and yet our Supreme Court applied fundamental error review. *See id. Vermeule* also parts ways with the myriad Arizona appellate decisions applying fundamental error review in the sentencing context. *See Smith*, 219 Ariz. at 135-366 ¶¶18-20 (discussing the "numerous occasions" when errors in sentencing have garnered fundamental error review).

**¶49** The majority opinion applies structural error review, in part, by characterizing A.R.S. § 13-711(A) as imposing a statutory findings requirement. Maj. Op. ¶ 16. But that's not what the statute does. The statute's text does not require the superior court to make any finding before

imposing consecutive or concurrent sentences. The text does not in any way narrow the reasons why a superior court may impose consecutive or concurrent sentences. Instead, the text merely requires the superior court to explain reasons for imposing consecutive or concurrent sentences, whatever those reasons might be.

¶50        The reason requirement here is unlike other situations where courts have found a non-waivable statutory findings requirement. In the juvenile dependency context, A.R.S. § 8-844(C)(1)(a)(ii) provides that the juvenile court "shall" "[m]ake . . . findings as to each parent," including "[t]he factual basis for the dependency." *See Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 297–98 ¶ 21 (App. 2020) (finding the requirement non-waivable). Similarly, in the context of administrative proceedings, A.R.S. § 41-1063 provides "[a]ny final decision shall include findings of fact . . .," which "shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." *See Aguirre v. Indus. Comm'n of Ariz.*, 247 Ariz. 75, 77–78 ¶¶ 14–15 (2019) (same). When making parenting time and legal decision-making decisions, A.R.S. § 25-403 states the superior court "shall consider" a list of factors and "shall make specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child." *See Reid v. Reid*, 222 Ariz. 204, 210 ¶ 20 (App. 2009) (same). Unlike each of the foregoing statutes, A.R.S. § 13-711(A) does not require (or even mention) "findings." We should not treat a statute like it imposes a findings requirement unless it expressly does so. *See State v. Brearcliffe*, __ Ariz. __, 2023 WL 2621280, *4 ¶ 18 (March 24, 2023) (disavowing a prior decision from this Court requiring superior courts to make a factual finding during sentencing because "[t]his interpretation of § 13-4033(C) requires more from trial courts than is statutorily required").

¶51        Notably, the cases the majority opinion relies upon to justify automatic remand (*Francine C.* and *Aguirre*) did not arise out of criminal proceedings, where harmless or fundamental error review is an option. To be clear, it is not my view that a superior court's failure to comply with A.R.S. § 13-711(A) is waivable, which is the argument *Francine C.* and *Aguirre* rejected. To say that an error is non-waivable, though, is not the same as saying it results in automatic remand, at least in the criminal context. Instead, there is a middle ground in criminal appeals. The non-waivable nature of the error means the failure to object results in application of fundamental error review. Notably, *Francine C.* acknowledges that remand should not be automatic in all cases, even where a "statutory findings requirement" is at play. *See* 249 Ariz. at 299 ¶ 27 ("Where the record is so clear that the appellate court does not need the aid

of findings, the court may waive such defect on the ground that the error is not substantial in that case.").

**¶52** Perez-Gutierrez did not object to the superior court's failure to comply with A.R.S. § 13-711(A). And *Vermeule* does not exempt fundamental error review here because the superior court, *after pronouncement of the sentences*, gave defense counsel an opportunity to raise any additional issues, and defense counsel did not do so. *See State v. Torrance*, 2020 WL 3095859, *3 ¶ 15 (refusing to apply *Vermeule* when "following its pronouncement of sentence, the trial court asked if either party had any issues about the case to discuss, and neither party did"). Thus, fundamental error review should apply. To establish fundamental error, a defendant has the burden to show "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142 ¶ 21 (2018). To prevail under either of the first two prongs, but not to prevail under the third, the defendant must separately show prejudice. *Id.*

**¶53** Perez-Gutierrez makes no attempt to establish fundamental error, and he couldn't do so if he tried. The superior court's error was not so egregious that Perez-Gutierrez could not have received a fair trial; the error had no impact on the trial. Perez-Gutierrez could, therefore, only prevail under one of the first two fundamental error prongs, both requiring a separate showing of prejudice. Perez-Gutierrez cannot show prejudice from the superior court's failure to give reasons because the superior court did not err in imposing consecutive sentences. Perez-Gutierrez was found guilty of sexually abusing his wife's half-sister. The victim testified that Perez-Gutierrez sexually abused her on numerous distinct occasions, spanning a period of years, beginning when she was just eleven years old. The superior court, thus, did not abuse its wide discretion in imposing consecutive sentences based on distinct acts of sexual abuse. *See State v. Williams*, 182 Ariz. 548, 562 (App. 1995) ("[C]onsecutive sentences [are] permissible so long as it was not factually impossible for the Defendant to commit one of the sexual assaults without also committing one of the others[.]"); *State v. Bruni*, 129 Ariz. 312, 320 (App. 1981) (explaining that it violates public policy to allow a person to repeat the crime of rape as many times as he likes on the same victim with no additional criminal liability).

¶54 Because I would affirm Perez-Gutierrez's sentences, I respectfully dissent.



AMY M. WOOD • Clerk of the Court
FILED: AA